Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI230004676
Transaction ID: 0020058269
Filing Date: 06/13/2023 04:18:17 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| ANNETTE GILNER, | CASE NO.: _____ |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT and JURY DEMAND** |
| MID-AMERICA COUNCIL OF BOY SCOUTS OF AMERICA and BOY SCOUTS OF AMERICA, | |
| Defendants. | |

COMES NOW Plaintiff, Annette Gilner, and for her causes of action against Mid-America Council of Boy Scouts of America and Boy Scouts of America, states the following:

## INTRODUCTION

1) This is a cause of action under the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, and the Nebraska Age Discrimination in Employment Act, challenging the Defendants' unlawful age and sex discrimination against Plaintiff and the Defendants' unlawful retaliation against Plaintiff.

## JURISDICTION AND VENUE

2) Plaintiff Annette Gilner ("Annette") is a resident of Omaha, Douglas County, Nebraska, was born on August 27, 1963, and is a woman.

3) Defendant Mid-America Council of Boy Scouts of America ("Mid-America Council") is a nonprofit domestic corporation licensed to do business in the State of Nebraska, in fact doing business in the

1

**EXHIBIT A**

State of Nebraska, and with its principal place of business in Omaha, Douglas County, Nebraska.

4) At all relevant times, Mid-America Council employed 15 or more employees who were employed for at least twenty calendar weeks in this year or last, pursuant to Title VII.

5) At all relevant times, Mid-America Council employed at least 20 employees for each working day in each of twenty or more calendar weeks within the appropriate time periods pursuant to the Nebraska Fair Employment Practices Act.

6) Defendant Boy Scouts of America ("Boy Scouts") is a nonprofit foreign corporation that conducts scouting activities across the United States. Boy Scouts is licensed to do business in the State of Nebraska, in fact doing business in the State of Nebraska, and with its principal place of business in Irving, Dallas County, Texas.

7) At all relevant times, Boy Scouts employed 15 or more employees who were employed for at least twenty calendar weeks in this year or last, pursuant to Title VII.

8) At all relevant times, Boy Scouts employed at least 20 employees for each working day in each of twenty or more calendar weeks within the appropriate time periods pursuant to the Nebraska Fair Employment Practices Act.

9) The Boy Scouts are organized into councils, which are chartered by the Boy Scouts to carry out the programs of the Boy Scouts within each council's jurisdiction. A council's jurisdiction usually consists of a particular geographic area.

10) Mid-America Council is a council operating under a charter granted and regularly renewed by Boy Scouts to exclusively conduct scouting activities in the States of Nebraska, Iowa, and South Dakota. The purpose of the Council is to carry out the programs of the Boy Scouts within the council's jurisdiction.

11) Mid-America Council is required to promote within that territorial jurisdiction and in accordance with Boy Scouts' Congressional Charter, Bylaws, and Rules and Regulations, the Boy

Scouts Scouting Program, using the methods established by the Boy Scouts.

12) Boy Scouts provides leadership, management, training materials, training sessions, an established system of teaching about scouting, and general oversight to its councils, including the Mid-America-Council.

13) Boy Scouts promulgates Bylaws, Rules and Regulations, a Code of Conduct Policy, and other policies, which all employees of Mid-America Council and other councils are required to comply with.

14) Boy Scouts provides group and regional directors, local HR representatives, and Employee Relations Specialists, who serve as resources for Mid-America Council and other councils, providing advice and guidance on management and governance decisions.

15) Boy Scouts provides Mid-America Council and other councils with a host of management tools, including but not limited to: administrative reviews, business practices assessments, financially sustainable council plans, governance reviews, steps for continuous improvement, stakeholder and community leader reviews, and markets strategy assessments.

16) Boy Scouts provides Mid-America Council and other councils with a variety of policies and documents used for council governance and to inform board members of their responsibilities. These include but are not limited to: Council Annual Report Contents, Council Election Procedures, Nondiscrimination Policy, Electronic Meeting Wording, Executive Board Diversity Surveys, Fiscal Policies and Procedures for BSA Units, Governance Committee Responsibilities, Meeting Evaluation Forms, New Board Member Packet Contents, Orientation Guides, Protection of Personal Information Policy, Frequency Listing of Resolutions, Responsibilities of the Board, Social Media Guidelines, Succession Planning Proposal, Local Council Annual Meeting, Role of the Council President, and Website Guidelines.

17) This Court has original jurisdiction over all claims contained herein pursuant to Nebraska Revised Statute, Section 24-302 (Rev. 1943).

18) Venue is proper in Douglas County, Nebraska, as it is the county where a substantial portion of the events at issue occurred.

## PROCEDURAL REQUIREMENTS

19) On or about July 23, 2021, within 300 days of the acts of which she complains, Annette filed her Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC"), which was dually filed with the Equal Employment Opportunity Commission ("EEOC").

20) On or about March 19, 2023, Annette's counsel received the Commission Determination from the NEOC. The EEOC issued its Notice of Right to Sue on May 2, 2023.

## FACTUAL BACKGROUND

21) Annette started her employment as the Chief Development Officer with Mid-America Council on February 1, 2019.

22) The Mid-America Council is a part of the Boy Scouts, a national organization that promotes, conducts, and supports scouting-related activities.

23) Chris Mehaffey ("Mehaffey") is a man, who was in his 40's during Annette's employment. During all relevant times, Mehaffey served as the CEO and Scout Executive for Defendant Mid-America Council, a position which he continues to hold.

24) In Annette's capacity as Chief Development Officer, she reported to Mehaffey.

25) Ryan Pickett ("Pickett") is a man, who was in his 30's during Annette's employment. Pickett worked as Director of Development for Mid-America Council in 2021. Pickett is currently

4

employed as Chief Development Officer for Defendant Mid-America Council.

26) In 2020, Mehaffey recommended to the Board of Directors of Mid-America Council ("Board") that it eliminate Annette's position. The Board of Directors disagreed with Mehaffey's recommendation and Annette remained employed as Chief Development Officer.

27) Mehaffey gave Annette a two percent (2%) raise that year, while others were given much larger raises.

28) In January 2021, Mehaffey denied training opportunities to Annette. This was the second time Annette had not been allowed to attend training. Mehaffey instead gave those training opportunities to Pickett.

29) Mehaffey routinely harassed Annette during her employment. Examples of his harassment of her include but are not limited to:

    a. Mehaffey lowered his voice and puffed out his chest when he spoke to Annette in an attempt to intimidate her;

    b. Mehaffey flung an envelope at Annette's face;

    c. Mehaffey refused to use Annette's name when he addressed her or spoke about her;

    d. Mehaffey took credit for Annette's work;

    e. Mehaffey gave credit for Annette's work to Pickett;

    f. Mehaffey referred to Annette as a member of Pickett's Team, implying Pickett was Annette's supervisor, even though he was not;

    g. Mehaffey referred to Pickett as "Vice-President of Development" in a donor meeting, creating the false perception that Annette reported to Pickett and was his subordinate;

    h.    Mehaffey excluded Annette at work meetings and in group interactions with other members of the Defendants' leadership;

    i.    Mehaffey took Pickett to meetings that Annette should have been invited to attend; and

    j.    Mehaffey denied Annette access to donors, staff, and information she needed to do her job.

30) Mehaffey's harassment of Annette began to take a toll on her mental and physical health, and she required medical treatment as a result.

31) In February 2021, Mehaffey gave Annette a negative performance evaluation. He stated she was not working well with others, which was untrue.

32) In mid-February 2021, Annette requested an accommodation of medical leave from Mid-America Council. That accommodation was approved, with a return date of mid-June of 2021.

33) Annette's leave was covered by the Family Medical Leave Act, and she submitted a certification of her serious health condition to the Mid-America Council.

34) In March and April 2021, Mid-America Council ignored Annette's medical leave and subjected her to different terms or conditions when it sent work emails to her personal email account, required her to turn in her work computer, and shut off her access to her work email account.

35) On information and belief, as soon as Annette left for medical leave, Mehaffey's efforts to sabotage Annette in her employment escalated. He conducted a search of her office, trying to dig up information he could use to support his advocacy for her termination.

36) Annette complained about age and sex discrimination to Mehaffey in mid-February of 2021, on April 12, 2021, and on June 9, 2021.

37) On June 16, 2021, Mehaffey terminated Annette's employment with Mid-America Council. The reason cited was that she had allegedly wrongfully sent donor information from her work email account to her personal email account.

38) Mid-America Council has no policy that forbids or even discusses sending files from one's work email account to a personal email account. As such, Annette committed no policy violation when she did so.

39) Upon information and belief, other Mid-America Council employees have forwarded email messages from their work email accounts to their personal email accounts and have not been terminated or otherwise disciplined.

40) Other female employees have complained about Mehaffey's behavior toward and harassment of them and their female colleagues while employed by the Mid-America Council.

41) Mehaffey wanted to replace Annette with her younger male counterpart Pickett.

42) When the Board refused Mehaffey's proposal to eliminate Annette's position in 2020, he harassed, excluded, and marginalized her, refused to give her credit for successes, and denied her access to the donors, staff, and information she needed to do her job.

43) Mehaffey was physically aggressive toward Annette when they spoke, refused to use her name, and even assaulted her by throwing an envelope at her face.

44) After Mehaffey terminated Annette, he replaced her with Pickett, who is younger, male, and has significantly less experience than Annette.

45) A portion of the Boy Scouts' Diversity, Equity, and Inclusion Statement reads as follows: "The Boy Scouts of America promotes a culture where each youth, volunteer, and employee feels a sense of belonging and builds communities where every person feels respected and valued."

46) The Boy Scouts' Scout Law espouses the values that each scout and the organization itself are supposed to live up to. It consists of the following:

TRUSTWORTHY. Tell the truth and keep promises. People can depend on you.

LOYAL. Show that you care about your family, friends, Scout leaders, school, and country.

HELPFUL. Volunteer to help others without expecting a reward.

FRIENDLY. Be a friend to everyone, even people who are very different from you.

COURTEOUS. Be polite to everyone and always use good manners.

KIND. Treat others as you want to be treated. Never harm or kill any living thing without good reason.

OBEDIENT. Follow the rules of your family, school, and pack. Obey the laws of your community and country.

CHEERFUL. Look for the bright side of life. Cheerfully do tasks that come your way. Try to help others be happy.

THRIFTY. Work to pay your own way. Try not to be wasteful. Use time, food, supplies, and natural resources wisely.

BRAVE. Face difficult situations even when you feel afraid. Do what you think is right despite what others might be doing or saying.

CLEAN. Keep your body and mind fit. Help keep your home and community clean.

REVERENT. Be reverent toward God. Be faithful in your religious duties. Respect the beliefs of others.

47) Mehaffey, Mid-America Council, and Boy Scouts violated both their own Diversity, Equity, and Inclusion Statement and the values set forth in Scout Law in their treatment of Annette.

## COUNT I
## VIOLATION OF THE
## NEBRASKA FAIR EMPLOYMENT PRACTICE ACT
## (SEX DISCRIMINATION)

48) Annette incorporates Paragraphs 1 through 47 by this reference as if fully set forth.

49) Defendants discriminated against Annette with respect to the terms and conditions of her employment in violation of the Nebraska Fair Employment Practice Act.

50) Annette's sex was a motivating factor in the discrimination, harassment, and termination she experienced.

51) As a result of the Defendants' acts and omissions, Annette has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT II
## VIOLATION OF TITLE VII
## (SEX DISCRIMINATION)

52) Annette incorporates Paragraphs 1 through 51 by this reference as if fully set forth.

53) Defendants discriminated against Annette with respect to the terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

54) Annette's sex was a motivating factor in the discrimination, harassment, and termination she experienced.

55) As a result of the Defendants' acts and omissions, Annette has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT III
## VIOLATION OF THE
## NEBRASKA AGE DISCRIMINATION IN EMPLOYMENT ACT

56) Annette incorporates Paragraphs 1 through 55 by this reference as if fully set forth.

57) Defendants discriminated against Annette with respect to the terms and conditions of her employment due to her age.

58) Annette was qualified for her position at the time the Defendants terminated her employment.

59) Annette's age is one but-for cause of her termination.

60) Defendants replaced Annette with a significantly younger male employee who was less qualified than Annette.

61) The Defendants by their actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Annette, discriminated against Annette in violation of the Nebraska Age Discrimination in Employment Act, and by doing so are subjected to liquidated and/or punitive damages.

62) As a result of the Defendants' acts and omissions, Annette has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT IV
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

63) Annette incorporates Paragraphs 1 through 62 by this reference as if fully set forth.

64) Defendants discriminated against Annette with respect to the terms and conditions of her employment due to her age.

65) Annette was qualified for her position at the time the Defendants terminated her employment.

66) Annette's age is one but-for cause of her termination.

67) Defendants replaced Annette with a significantly younger male employee, who was less qualified than Annette.

68) Defendants by their actions willfully, maliciously, and intentionally, with reckless indifference to the rights of Annette, discriminated against Annette in violation of the Age Discrimination in Employment Act, and by doing so are subjected to punitive and/or liquidated damages.

## COUNT V
## VIOLATION OF THE
## NEBRASKA FAIR EMPLOYMENT PRACTICE ACT
## (RETALIATION)

69) Annette incorporates Paragraphs 1 through 68 by this reference as if fully set forth.

70) Annette complained in good faith about what she believed to be discrimination and/or harassment based on age and sex as well as retaliation for reporting such discrimination and/or harassment.

71) Defendants retaliated against Annette for complaining about and reporting their unlawful behavior by escalating their harassment of her and ultimately terminating her.

72) It is unlawful under the laws of the State of Nebraska for an employer to discriminate against an employee for opposing any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act.

73) Annette's protected activity in reporting Defendants' unlawful behavior was one but-for cause of Defendants' retaliatory conduct against Annette that resulted in the further harassment and discriminations that she experienced, culminating in her termination.

74) As a result of the Defendants' acts and omissions, Annette has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT VI
## VIOLATION OF TITLE VII
## (RETALIATION)

75) Annette incorporates Paragraphs 1 through 74 by this reference as if fully set forth.

76) Annette complained in good faith about what she believed to be discrimination and/or harassment based on sex and/or age as well as retaliation for reporting such discrimination and/or harassment.

77) Defendants retaliated against Annette for complaining about and reporting such discrimination and/or harassment, by escalating their discrimination and/or harassment of her, which culminated in Defendant's termination of her employment.

78) Title VII of the Civil Rights Act of 1964, as amended, prohibits an employer from retaliating against an employee who has made a charge, testified, assisted, or participated in any charge of unlawful discrimination under the Act.

79) As a result of Defendants' acts and omissions, Annette has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish, humiliation,

embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNT VII
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

80) Annette incorporates Paragraphs 1 through 79 by this reference as if fully set forth.

81) Annette applied and was approved for medical leave from Defendant Mid-America Council she was entitled to under the Family and Medical Leave Act on February 13 or 14, 2021.

82) Annette's medical leave was necessitated by the discrimination and retaliation she was experiencing from Mehaffey.

83) Annette submitted to Defendants an FMLA certification completed by her doctor.

84) Defendants approved Annette's FMLA leave request.

85) Upon learning that Annette had applied for medical leave, Mehaffey immediately entered her office, rummaged through her files, and seized the equipment she needed to do her job.

86) During the time Annette was on medical leave, Mehaffey accelerated his efforts to replace Annette with Pickett.

87) At or around the time she was to return to work following her medical leave, Mehaffey terminated Annette's employment.

88) Defendant's hostile treatment and termination of Annette were motivated by and in retaliation for her decision to take medical leave.

89) Discrimination and retaliation against an employee for taking leave under FMLA is prohibited by law.

90) As a result of Defendants' acts and omissions, Annette has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

91) Defendants will not be able to show their FMLA retaliation is in good faith, so Annette will be entitled to liquidated damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Annette Gilner demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, liquidated and punitive damages to the extent permitted by law, for interest as allowed by law, for attorneys' fees, for the costs of this action, for appropriate equitable and injunctive relief, and for all other such relief as may be just under the circumstances and consistent with the purposes of the Nebraska Fair Employment Practices Act, the Nebraska Age Discrimination in Employment Act, the Age Discrimination in Employment Act, Title VII, and the Family Leave and Medical Act.

## JURY DEMAND

COMES NOW Plaintiff Annette Gilner, by and through her undersigned attorneys, and requests a trial by jury in Douglas County, Nebraska.

DATED this 13th day of June, 2023.

                      ANNETTE GILNER, Plaintiff

BY:   */s/ Thomas J. Freeman*
       Thomas J. Freeman, #23639
       Alexis S. Mullaney, #25908
       FIEDLER LAW FIRM, PLC
       17330 Wright Street, Suite 102
       Omaha, NE 68130
       (402) 316-3060
       (402) 513-6501
       tom@employmentlawnebraska.com

alexis@employmentlawnebraska.com

Attorneys for Plaintiff

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI230004676
Transaction ID: 0026094298
Filing Date: 06/22/2023 08:45:09 AM CDT

# SERVICE RETURN

Douglas District Court
1701 Farnam-Clerk of District Court
1717 Harney-Separate Juvenile Court
Omaha                NE 68183

To:
Case ID: CI 23    4676 Gilner v. Mid-America Council of Boy Sco

[Return receipt card showing:]
- Article Addressed to: Mid-America Council of Boy Scouts, 12401 W Maple Rd, Omaha, NE 68164
- Signature: Allen
- Received by: Allie Ladd
- Article Number: 7019 1640 0000 6662 7476
- Service Type: Certified Mail
- Barcode: 9590 9402 7985 2305 0002 65

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY:  Mid-America Council of Boy Scouts

At the following address:  12401 W Maple Rd, Omaha, NE 68164

on the __14th__ day of __June__ __2023__, as required by Nebraska state law.

/s/ Tom J. Freeman

Postage $ __9.00__   Attorney for:  Plaintiff

The return receipt for mailing to the party was signed on __June 15__, __2023__.

To: Mid-America Council of Boy Scouts
    c/o Christ Mehaffey
    12401 W Maple Road
    Omaha, NE 68164

From: Thomas J Freeman
      17330 Wright Street Suite 102
      Omaha, NE 68130

**ATTACH RETURN RECEIPT & RETURN TO COURT**

# Certificate of Service

I hereby certify that on Thursday, June 22, 2023 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Gilner,Annette, represented by Alexis S. Mullaney (Bar Number: 25908) service method: Electronic Service to Alexis@employmentlawnebraska.com

Signature: /s/ Thomas J. Freeman (Bar Number: 23639)

## SERVICE RETURN

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI230004676
Transaction ID: 0020097926
Filing Date: 06/22/2023 08:47:16 AM CDT

Douglas District Court
1701 Farnam-Clerk of District Court
1717 Harney-Separate Juvenile Court
Omaha                NE 68183

To:
Case ID: CI 23    4676 Gilner v. Mid-America Council of Boy Sco

[Certified mail return receipt card showing:
- Article Addressed to: Sheila Kalhorn, Boy Scouts of America, 12401 W Maple Road, Omaha, NE 68164
- Signature: Allie Ladd (Received by printed name)
- Service Type: Certified Mail
- Article Number: 7019 1640 0000 6662 7469
- Barcode: 9590 9402 7985 2305 0002 72
- PS Form 3811, July 2020]

### CERTIFIED MAIL
### PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: __Boy Scouts of America__

At the following address: __12401 W. Maple, Omaha, NE 68164__

on the __14th__ day of __June__ __2023__, as required by Nebraska state law.

/s/ Tom J Freeman

Postage $ __9.24__    Attorney for: __Plaintiff__

The return receipt for mailing to the party was signed on __June 15__, __2023__.

To: Boy Scouts of America          From: Thomas J Freeman
    c/o Sheila Kalhorn                   17330 Wright Street Suite 102
    12401 W Maple Road                   Omaha, NE 68130
    Omaha, NE 68164

**ATTACH RETURN RECEIPT & RETURN TO COURT**

# Certificate of Service

I hereby certify that on Thursday, June 22, 2023 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Gilner,Annette, represented by Alexis S. Mullaney (Bar Number: 25908) service method: Electronic Service to Alexis@employmentlawnebraska.com

Signature: /s/ Thomas J. Freeman (Bar Number: 23639)